In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2689

JEFFREY D. COCHRAN,

*Plaintiff-Appellant,*

*v.*

ILLINOIS STATE TOLL HIGHWAY AUTHORITY, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 9145 — **Manish S. Shah**, *Judge.*

ARGUED APRIL 18, 2016 — DECIDED JULY 8, 2016

Before EASTERBROOK and SYKES, *Circuit Judges*, and
ADELMAN, *District Judge*.[*]

ADELMAN, *District Judge*. Plaintiff Jeffrey Cochran brings
this putative class action under 42 U.S.C. § 1983 against the
Illinois State Toll Highway Authority and several of its direc-
tors claiming violations of procedural due process and equal

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

protection and asserting related state law claims. Plaintiff's claims arise from fines he incurred while driving on the Illinois tollway. The district court dismissed plaintiff's federal claims for failure to state a claim for relief and declined to exercise supplemental jurisdiction over the state law claims. Plaintiff appeals, and we affirm.

## I.

Plaintiff, an Ohio resident, is accustomed to driving on Ohio's tollways. He alleges that Ohio assesses a toll only when a driver exits a highway. Illinois' toll system, however, functions differently, assessing periodic tolls as a driver continues on the highway. It also allows drivers to use electronic transponders which automatically charge motorists for tolls. This eliminates the need for drivers to stop at toll booths and allows them to pass through toll plazas at full speed. Thus, Illinois has two sets of lanes at each toll plaza: full-speed lanes to the left for transponder users and lanes to the right for drivers who stop and pay cash to a toll booth attendant. The tollway has signs informing drivers that they are approaching a toll plaza and indicating which are transponder lanes and which are cash lanes. If a driver without a transponder uses a full-speed transponder lane, the system records the fact that the driver failed to pay a toll.

The tollway grants a seven-day grace period during which drivers who miss a toll can still pay it, either online or by mail, without incurring a fine. After seven days, the owner of the car incurs a $20 fine per violation. If an owner incurs three fines within a two-year period, the tollway sends the owner a notice, which includes the date, time, and location of each violation and informs the owner of his right to contest the violations at a hearing. The notice also warns that

toll evasion is a strict liability and vicarious liability offense, meaning that a car owner cannot assert as a defense that "(1) the violation notice wasn't mailed sooner, (2) the driver did not intend to miss the payment or go through [a transponder] lane, or (3) someone else was driving the vehicle." SA00107–00108.[1]

Transponder users are granted a second grace period in which to pay missed tolls without incurring the $20 per violation fine. After notice of the violations is mailed, transponder users have until the due date on the notice to pay their missed tolls and update their account information in order to avoid fines.

Plaintiff alleges that in December 2013, he drove from Ohio to Chicago. He alleges that when he entered Illinois there was no signage informing him of how Illinois' toll system worked, and that he did not understand the signage at the toll plazas. Because he believed from his experience with the Ohio toll system that he only needed to pay a toll when he exited the highway, plaintiff used the full-speed transponder lanes and missed three tolls. At some point, he realized his mistake and began using the cash lanes instead. He called the tollway's toll-free line and asked if he had missed any tolls and was told that no violations appeared in the database. On January 30, 2014, however, he received notice of the three violations and his right to a hearing. Apparently, information about plaintiff's violations was not entered into the tollway's database until January 21, 2014. Rather than re-

---

[1] Citations in this format are to the short appendix attached to plaintiff's Corrected Brief.

questing a hearing on the violations, plaintiff paid the missed tolls and fines, which totaled $64.50.

## II.

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6). *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations and citation omitted). We accept all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor. *Tamayo*, 526 F.3d at 1081.

## A.

As to plaintiff's due process claim, procedural due process requires notice of the potential deprivation, in this case the $20 per violation fine, and a meaningful opportunity to be heard. *Gimbel v. Commodity Futures Trading Comm'n*, 872 F.2d 196, 200 (7th Cir. 1989) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970)). Plaintiff's complaint alleges that he received notice of toll violations and that the notice conveyed his right to a hearing. Plaintiff also was offered a seven-day grace period during which he could pay the missed toll without incurring a fine, and he was not assessed a fine until his third violation. This is sufficient to satisfy due process.

Plaintiff contends that the tollway signage was confusing and did not provide adequate notice of how the toll system worked such that he could have avoided a fine in the first place. This allegation does not rise to the level of a constitu-

tional violation.[2] Due process does not require a state to post signage notifying all those entering of its laws and regulations. Rather, the statute or regulation is adequate notice in and of itself as long as it is clear. *See Walker Stone, Inc. v. Sec'y of Labor*, 156 F.3d 1076, 1083 (10th Cir. 1998) ("In order to satisfy constitutional due process requirements, regulations must be sufficiently specific to give regulated parties adequate notice of the conduct they require or prohibit."); *Becker v. Lockhart*, 971 F.2d 172, 174 (8th Cir. 1992) ("Due process … does require that laws provide notice to the ordinary person as to what constitutes prohibited activity."). [3] The onus is on citizens to inform themselves of the laws and regulations of the state in which they travel. *Schor v. City of Chi.*, 576 F.3d 775, 780 (7th Cir. 2009) ("Different jurisdictions often proscribe different types of conduct, and persons entering any specific place … do so knowing that they are obliged to inform themselves about any relevant rules of the road."); *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("Based on the

---

[2] At the motion to dismiss stage, we take all plaintiff's allegations to be true. However, the Illinois tollway signage is in fact quite clear. Signs indicate when drivers are approaching a toll plaza and which lanes are "I-Pass," or transponder-only, lanes and which are cash lanes. *See, e.g.,* SA00093 (Figure 37).

[3] Plaintiff does allege that the language of the Illinois toll regulation is unconstitutionally vague because it fails to define "toll evasion" such that an ordinary person can understand what conduct is prohibited. However, the Illinois administrative code prohibits a vehicle from being "driven through a toll plaza collection facility without payment of the proper toll." 92 IL ADC 2520.269(e). This language indicates that a violation occurs once a driver drives through a toll plaza without paying the toll and is easily understood. *See Schor v. City of Chi.*, 576 F.3d 775, 781 (7th Cir. 2009).

notion that the law is definite and knowable, the common law presume[s] that every person kn[ows] the law.").

Plaintiff also contends that defendants failed to provide him notice of the seven-day grace period in which tolls may be paid without incurring a fine. However, due process requires only notice of the potential deprivation and an opportunity to be heard, *Gimbel*, 872 F.2d at 200, and not notice of a grace period which is unrequired in the first place.[4]

Plaintiff also alleges that defendants violated his right to procedural due process by failing to provide him with information about his violations when he first called the tollway system. Notice at this point presumably would have allowed him to pay the tolls within the seven-day grace period and avoid fines. However, plaintiff alleges that defendants did provide him information about violations in the notice he received—which specified the date, time, and location of each violation—approximately a month after they occurred. SA00107–00108. Due process does not require notice-on-demand but rather timely notice, and a one month delay in receiving notice does not offend due process.

Finally, plaintiff contends that the hearing to which he was entitled, but did not request, would not have provided him with a meaningful opportunity to be heard. This is so, he argues, because a toll violation is a strict liability offense and he could not have defended himself on the ground that he did not know that he had run the toll. However, strict lia-

---

[4] We note that signs after each toll plaza inform drivers of the seven-days-to-pay policy. This information is also publicly available on the tollway's website, http://www.illinoistollway.com/tolls-and-i-pass/unpaid-tolls, which plaintiff admits he visited, SA00016.

bility statutes in this context are constitutional. *See Karlin v. Foust*, 188 F.3d 446, 475–76 (7th Cir. 1999) ("[T]he Supreme Court has recognized the propriety of strict liability without any element of scienter in statutes that are 'regulatory' in nature."); *see also Idris v. City of Chi.*, 552 F.3d 564, 566 (7th Cir. 2009) ("Legal systems often achieve deterrence by imposing fines or penalties without fault."). If knowledge were a defense to running a toll, it would be too easy for drivers, especially out-of-state drivers like plaintiff, to avoid paying tolls. *See, e.g., id.* (upholding the constitutionality of a red light camera ordinance with no vicarious liability defense and noting that allowing a car owner to argue that someone else was driving "would make it easy for owners to point the finger at friends or children—and essentially impossible for the City to prove otherwise").

Further, the fact that plaintiff could not present a knowledge defense at his hearing does not render the hearing meaningless. Due process does not entitle a person to a hearing at which they will succeed. *Am. Nat'l Bank & Trust Co. v. City of Chi.*, 826 F.2d 1547, 1550 (7th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987). Although the knowledge defense was not available, other defenses were. Thus, plaintiff was not precluded from presenting *any* defense, and the hearing was not meaningless.

**B.**

Plaintiff also alleges that defendants treat transponder users and non-transponder users differently in violation of the Equal Protection Clause. Specifically, plaintiff alleges that transponder users receive a second grace period in which to pay missed tolls before incurring the $20 fine, and that they receive written notice of this second grace period. The Equal

Protection Clause generally protects people who are treated differently because of membership in a suspect class or who have been denied a fundamental right. *Srail v. Vill. Of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Use or non-use of a transponder does not involve a protected status or a fundamental right. Thus, defendants need only show that the differing treatment was rationally related to a legitimate state interest. *Id.*

Defendants establish a rational basis for giving a second grace period to transponder users and not to non-transponder users. The use of transponders decreases traffic, increases efficient use of the highway, and decreases the resources required to operate tollbooths, all legitimate governmental interests. Granting transponder users a second grace period provides an incentive to use transponders and thus serves genuine government interests.

Plaintiff argues unpersuasively that the grace period incentive is not necessary. The rational basis test does not require a showing that the differing treatment be necessary to achieving a legitimate goal, only that it be rationally related to it. Defendants meet this burden

### III.

For these reasons, the judgment of the district court is AFFIRMED.